# Central of Georgia Ry. Co. *v.* Ashley.

### *Damages for Injury to Passenger.*

(Decided Feb. 11, 1909.　48 South. 981.)

1. *Bill of Exceptions; Time for Filing; Extension.*—Where the bill of exceptions is not signed within the time of the first order, and the order extending the time, and within which time the bill was filed and signed, is made by the court instead of by the presiding judge, such bill of exceptions cannot be considered.

2. *Same.*—Circuit Court Rule No. 30, forbids the extension of time for signing a bill of exception to be extended into a succeeding term by agreement of counsel, but does not prohibit the extension by the presiding judge, except within the limits of six months. (Sec. 620, Code 1896.)

3. *Judgment; Construction of Entry; Demurrer.*—The judgment entry in this case stated and examined, and held to show only a ruling on demurrer to the whole complaint asserting the damages claimed to be remote and speculative, and not upon demurrers to the separate counts of the complaint.

4. *Appeal and Error; Review; Presumption as to Correctness of Lower Courts Ruling.*—The recitals in the transcript must affirmatively show error in the action of the lower court to overcome the presumption indulged as to the correctness of the court's ruling; so in the absence of judgment entry showing unequivocally the ruling on demurrer, the presumption will be indulged on appeal that tne demurrer was abandoned.

5. *Same; Record; Matters Not Shown.*—Evidence not in the record will not be considered on appeal.

6. *Pleading; Demurrer; Scope.*—Objection to damage claimed as remote and speculative, must be taken by motion to strike or by special charges requested, notwithstanding the complaint may be tested by demurrer if not sufficient to apprise defendant of the character of the injury flowing from the wrong charged.

7. *Carriers; Passengers; Duty to Notify of Transfer Points.*—A carrier owes its passengers the duty to advise them by reasonable means of schedules, routes and transfer points at which passengers should change in order to reach their destination.

2. *Same; Actions; Materiality of Allegation.*—Where the action was for damages for negligent failure to notify passenger where to change cars, an allegation that the train was propelled by steam, was immaterial and unnecessary to be proven.

9. *Same; Excessive Damages.*—A recovery of $500 damages is not excessive where the passenger, a lady, was deflected from her journey, compelled to undergo added travel and stops in hotels, re-

sulting in annoyances, illness, anxiety and some expense, on account of the carrier's failure to notify her of a change of cars.

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SAYRE.

Action by F. E. Ashley against the Central of Georgia Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

The only counts that are referred to in the opinion and necessary to be here set out are the fifth, sixth, and seventh counts, which are as follows:

"(5) Plaintiff claims of the defendant the sum of $1,999 as damages, for this: That heretofore, on to wit, the 15th day of September, 1904, the defendant was engaged in operating by steam a railway·as a common carrier of passengers from the city of Montgomery, in the state of Alabama, to various points in the state of Georgia and in the state of Alabama. And· plaintiff avers that she bought a ticket at the Union Station in the city of Montgomery, Ala., to Andalusia, Ala., and that she was unfamiliar with the road of the defendant, and that the servant, agent, employe, or conductor of the defendant called upon her for her ticket; that she showed the said servant, agent employe, or conductor her said ticket; and that the servant, agent, or conductor, after inspecting the said ticket, did negligently fail to inform plaintiff that she would have to change cars at the town of Union Springs, in the state of Alabama, and take another car, so that she might reach her designation, and by reason of said negligence on the part of the said conductor, servant, agent, or employe of the defendant as aforesaid she was greatly injured, in this: It was in the nighttime, and plaintiff was put off at a strange place, to wit, Cuthbert, Ga., where she had to remain until the next day, so that she might take passage to said Union Springs, and there change cars that she

might reach her destination. And plaintiff avers that she was made sick and was greatly frightened, she suffered great mental anguish and physical pain, that it prevented her from filling an engagement she had at Andalusia, and that she was prevented from reaching her destination, all to her great damage as aforesaid of $1,999. And plaintiff avers that the damages claimed in this count are for the same cause of action that is claimed in the first, second, third, and fourth counts of this complaint."

(6) Same as count 1, down to and including "the city of Montgomery," where it first occurs therein, and adds: "To Cuthbert, in the state of Georgia; that along its said lines was the station in said state of Alabama called Union Springs; that from said Union Springs, Ala., ran another railway line operated by defendant to Andalusia, Ala., and that on said day and date plaintiff bought a ticket at Montgomery, Ala., to Andalusia, Ala., and became a passenger on one of the cars of the defendant; that in order to go from Montgomery, Ala., to Andalusia, Ala., on said ticket, plaintiff should change cars at Union Springs, Ala., and the defendant so negligently conducted its said business that by reason thereof plaintiff dod not change cars at said Union Springs, Ala., but was carried beyond Union Springs, Ala., and by reason of said negligense she was greatly damaged, in this to wit: [Here follows catalogue of her special injuries and damages, same as in count 6.]"

(7) Same as count 6, except that it alleges that it was the duty of defendant, its servant, agent, or employe, to notify plaintiff that she should change cars at said Union Springs, Ala., for said Andalusia, Ala.; but, notwithstanding this duty, the defendant, or its servant, agent, or employe, did negligently fail to so notify

plaintiff, and by reason thereof the plaintiff was carried beyond Union Springs, etc.

There was judgment for plaintiff in the sum of $500, which judgment was rendered on October 15, 1906. On Wednesday, November 14, 1906, and on December 14, 1906, an order was granted by the court extending the time for signing the bill of exceptions—in the first instance 30 days, and in the second instance 20 days; 30 days having been granted from the day of the judgment. On Saturday, December 29, 1906, the motion for a new trial was overruled, and the presiding judge of the court granted an order extending the time for filing the bill of exceptions 30 days, and a further order was entered by the presiding judge extending the time to and including February 7th.

CHARLES P. JONES, W. F. THETFORD, JR., and J. B. JONES, for appellant. The bill of exceptions still stands as to the ruling of the trial court on the motion for a new trial, and should not be stricken.—*Alabama Mid. Ry. Co. v. Brown,* 129 Ala. 682. The judgment sufficiently shows the overruling of the demurrers to the complaint.—*A. G. S. R. R. Co. v. Shahan,* 116 Ala. 302. Neither counts 5 nor 7 stated a cause of action.—Section 3333, Code 1896; *Southern Ry. Co. v. Bunt,* 131 Ala. 591; *Cent. of Ga. v. Freeman,* 134 Ala. 354; *Page v. N. Y. Cent. Ry. Co.,* 6 Duer 523; *Barker v. N. Y. Cent. Ry.,* 24 N. Y. 599. Under the pleadings and proof the defendant was entitled to the general charge.—*Dean v. E. T. V. & G. R. R. Co.,* 98 Ala. 586; *Southern Ry. Co. v. McGowan,* 43 South. 378; *Rogers v. Brooks,* 105 Ala. 549; *Central Railroad & Banking Co. v. Ingram,* 95 Ala. 152. The verdict was excessive.—*Richardson v. Bir. Cot. Mfg. Co.,* 116 Ala. 381.

[Central of Georgia Ry. Co. v. Ashley.]

HILL, HILL & WHITING, for appellee. The bill of exceptions was not signed in time, and the motion to strike should prevail.—Rule 30, p. 1200, Code 1896; *Abercrombie, et al. v. Vandiver,* 140 Ala. 228; *Arnett v. Western Ry. Co.,* 39 South. 775; *Western of Alabama v. Russell,* 39 South. 311; Acts 1900-01, p. 830. The record does not show a ruling on demurrer so as to raise the question of the correctness of the count.—*Couch v. Davidson,* 109 Ala. 313. Neither counts 5 nor 7 were subject to the demurrers interposed.—15 L. R. A. 349; 24 N. Y. 599; 6 Duer 523; 2 Redfield's Neg. 259. The court did not err in refusing the charges requested by the defendant.—7 Am. St. Rep. 629; 11 Am. L. Reg. 159; 24 N. Y. 599. The court did not err in overruling the motion for a new trial.—*Simpson v. Golden,* 114 Ala. 336. It was the duty of defendant to announce the change of cars.—Authorities supra.

McCLELLAN, J.—The necessary continuity of the time, from the main trial to the date of the attempted authentication of the purported bill of exceptions for that trial, within which it should, to be effective, have been signed, was broken by the effort of the court, instead of the presiding judge, to extend it.—*Scott v. State,* 141 Ala. 39, 37 South. 366; *Arnett v. Western Ry.,* (Ala.) 39 South. 775; *Western Ry. v. Russell,* 144 Ala. 142, 39 South. 311, 113 Am. St. Rep. 24. Hence, so far as the main trial is concerned, the paper purporting to be a bill of exceptions thereon is valueless.

Counsel for appellant insist that this paper is at least a valid bill of exceptions to bring up for review the action of the court below in overruling the motion for a new trial. The motion was regularly retained on the proper docket of the court until December 29, 1906, on which date it was overruled. In the order overruling

the motion the defendant (appellant) was granted 30 days in which to perfect its bill of exceptions on the motion for a new trial. On January 26, 1907, the presiding judge, as such, undertook to extend the time to February 7, 1907. The paper was in fact signed by the judge on February 6, 1907. By the act approved December 6, 1909, (Acts 1900-01, p. 122), three terms of the city court of Montgomery are provided for. One of these terms commences on the first Monday in February. Rule 30 of circuit court practice (Code 1896, p. 1200) merely forbids the extension, by agreement of counsel, of the time for signing the bill of exceptions into a succeeding term of the court, but does not inhibit the extension by the presiding judge of the time for signing to the limit of six months.—Code 1896, § 620. There is a field of operation for both the rule and the statute cited.—*Cooley v. U. S. L. Ass'n*, 132 Ala. 590, 31 South. 521. The extension in *Abercrombie v. Vandiver*, 140 Ala. 228, 37 South. 296, was by agreement of counsel. The bill here was signed within the time extended by the presiding judge; and hence became a part of the record for service in respect of a review of the action of the trial court upon the motion for a new trial.—*Ala. Mid. Ry. v. Brown*, 129 Ala. 29 South. 548.

The rulings on the pleadings will be first considered. The judgment, as here important, recites: "This day came the parties by their attorneys, and by leave of the court first had and obtained the plaintiff amends her complaint by interlining count three (3) and by adding thereto counts numbered six (6) and seven (7). And the plaintiff withdraws count four (4) of the complaint, and the defendant's *demurrer to the complaint* being argued by counsel and understood by the court, it is considered and ordered by the court, and it is the judgment of the court that the *said demurrer to the* com-

plaint be and the same is hereby overruled." Italics supplied.) The only demurrers we find in the transcript are thus framed: The caption reads: "Comes the defendant, by attorney, and demurs to the complaint filed in this cause, and separately to each count thereof, and assigns as grounds of demurrer the following: * * *." The several counts, from 1 to 5, inclusive, are separately assailed; the grounds of objection to each count being directed thereagainst immediately after the statement, "To the first count," "To the second count," and so on through the other three. After dealing with the five counts, the demurrer concludes, "To the complaint as a whole and separately to each count thereof," following this with two grounds alleging that the damages claimed are remote and that they are speculative. A separate demurrer, separately filed, to count 7 of the complaint, also appears in the record.

Counsel for appellee take the point, and stress it in brief, that the judgment entry shows a ruling on demurrer to the complaint as a whole. Counsel for appellant controvert this contention, and insist that the recital quoted evinces a ruling overruling, not only that part of the demurrer expressly addressed to the whole complaint, and as well those addressed to each count, including count 5, but also overruling the separate demurrer to count 7. In support of appellant's view we are cited to the case of *A. G. S. R. R. v. Shahan*, 116 Ala. 302, 22 South. 509, from the transcript of which a judgment entry very similar to that with which we are now concerned is copied in brief. There the court took no notice of the question at hand; and, though the conclusion therein reached might have been different, had the point been taken, that decision is not authoritative, for the very reason that no ruling on the present point was made. In short, the question was not considered or de-

cided. It is manifest that the gist of the inquiry involves a construction of the judgment entry, viz.: Was the court's action, to be drawn alone from the judgment entry in the absence of ambiguity therein, upon demurrer to the complaint as a whole or upon demurrer to only parts of the complaint? Appellant can derive nothing in its favor from the caption (of the demurrer) quoted; for the pleading itself expressly addresses the objections contained in it to separate counts of the complaint, except in its last paragraph, wherein the whole complaint is assailed.

We construe the recital to show only a ruling on demurrer to the whole complaint, and not upon demurrers covering separable parts of the complaint. Such was the conclusion of this court in *Griel v. Lomax*, 86 Ala. 132, 5 South. 325, upon substantially the same inquiry we now have. In that case the complaint contained two of the common counts and one special count, and the judgment entry recited "that the defendant demurred to the complaint," and that the court sustained the demurrer; but the demurrer copied into the transcript is addressed only to the special count. The plaintiffs then amended their complaint by adding another special count, and the defendant then demurred "to the complaint as amended," but his demurrer was overruled. Upon this status the court said: "The demurrer, as shown by the judgment entry, is taken to the entire complaint, as amended, and not to any particular count supposed to be defective." In our recent case of *Alabama Chemical Co. v. Niles*, 156 Ala. 298, 47 South. 239, the *Griel-Lomax* decision was, in substance and effect, followed.

The presumption, on appeal, of the correctness of the action of the primary court, must be affirmatively overcome by recitals in the transcript presented here, before

error to reversal is shown; and, in keeping with this necessity, to acquit the trial court of error, it will be presumed, in the absence of an unequivocal ruling by the court on demurrer, that the demurrant abandoned it. We have, hence, as the only demurrer addressed to the whole complaint, and on which only the judgment entry shows the court to have ruled, that asserting the damages claimed to be remote and speculative. These objections cannot be taken by demurrer; motion to strike or special charges to the jury being the approved method to eliminate, if improper, such claimed elements of recovery. Of course, where the pleading is not sufficiently definite and certain to apprise the defendant of the character of the injury proximately flowing from the wrong, demurrer is the proper pleading to test that infirmity.—*City Delivery Co. v. Henry,* 139 Ala. 161, 34 South. 389. The demurrer, to the whole complaint, was correctly overruled.

Counsel for appellant have presented an elaborate argument in support of their contention that neither the complaint, nor any count of it, states a cause of action, and hence will not support the judgment; and the ground of the insistence is that no primary duty rests on the defendant, as a common carrier of passengers, to without being sought for the information, inform a passenger of the necessity to change cars in order to reach his destination, as indicated by his ticket. or otherwise properly secured right to transportation to a destination beyond a point at which, to reach that destination, the passenger must change cars. The argument is so earnest, as well as elaborate, we feel impelled to respond to it; for, if the contention is sound, a reversal would result.

While the question in hand has not been, so far as we are now advised, the subject of adjudication apart from

any other related question, yet there is one decision of a learned court in which the duty, the breach of which the complaint complains, was affirmed as an essential factor to the conclusion reached therein. This view is confirmed by the texts to be quoted. In 6 Cyc., at page 584, it is said: "Where it is necessary for the passenger to change cars or trains in the prosecution of the journey, reasonable notice thereof by the servants of the carrier is sufficient, and the passenger not governing himself by such notice cannot recover damages if he loses his connection." In 2 Redfield's Law of Railways (6th Ed.) it is said: "The duty of railways where there is a change of cars has often been commented upon by the courts. It seems to result, from the very nature of the case, that the very least which could be regarded as the reasonable performance of the duty of the company towards its passengers would be that the passenger should have timely notice of the change and reasonably sufficient time to make it."

The first-quoted text is based upon the decisions of the New York courts in *Page v. N. Y. Central R. R.,* 6 Duer, 523, and later, after revivor in the name of Barker, was taken to and affirmed by the Court of Appeals, and reported in 24 N. Y. 599. Page bought a ticket from Albany to Lyons. The defendant operated two trains, leaving Albany within an hour of each other, on which Page's ticket was good. One of these ran through Lyons, and the other ran to Syracuse, at which point, to reach Lyons, a change of cars from that train was necessary. Some of the testimony for the plaintiff tended to show that the ticket agent at Albany told the plaintiff that the Syracuse train, taken by the plaintiff, would take him to Lyons. This was controverted. Some of the testimony for the defendant tended to show that the plaintiff was informed, or was offer-

ed such opportunity as would have informed an ordinarily intelligent person, employing reasonable care and caution, that a change of cars at Syracuse was necessary. Obviously a material inquiry in the premises, whether as effecting the exoneration of the carrier from the consequences of the asserted misdirection of the agent at Albany or not, was the existence vel non of the primary duty of the carrier to notify passengers of the necessity for a change of cars in order to travel to Lyons. Writing to that proposition the Supreme Court (6 Duer, 529) declared: "If the defendant gave such published notice of the running of its trains, and such special notice in the cars, of the necessity of changing cars at any particular station, that every traveler of ordinary intelligence, by the use of reasonable care and caution, would obtain all the requisite information as to the route to be traveled, and the cars to be taken at an intermediate point of the voyage, it discharges its whole duty in this respect. If a passenger, merely by a failure to use such care and caution, instead of changing cars at a particular station, and taking cars which go to the place to which he has paid his fare, continues in the cars in which he started, and is carried in another direction, the result is to be attributed to his own negligence, and not to a breach of duty, or of contract, on the part of the company. The fact of the publicity of such regulations, the time, manner, and circumstances of publishing them, and whether sufficient to bring home actual notice to the passenger, provided he bestows reasonable care and attention, in order to inform himself, is one to be determined by the jury." We take the liberty of transposing, in this connection, this clause of the opinion: "If the plaintiff had traveled the road before, in the train leaving at the same hour, it would be a fact bearing upon the question of knowledge. The

weight of the fact would depend upon the frequency and recency of the period of such traveling."

From the quoted texts, as well as from the observations of the court in the Page Case, it is seen that a primary duty rests on the carrier of passengers to give publicity to its regulations, whether of schedule, including places whereat its train will stop for the discharge or reception of passengers, or of routing on its roadway, embracing points of change to another line of its roadway or that of another company, to the end that the ordinarily prudent and intelligent traveler may be informed of the facts essentially necessary for him to accomplish his journey.  The reason for such duty inheres in the nature of the service afforded by such agencies, in connection with the power possessed by carriers to formulate and enforce such reasonable regulations as the conduct of the business requires.  Within proper limits, they may make schedules, create routes and prescribe transfer points at which passengers, traveling beyond, must change cars.  Having this power, it would be wholly irrational to say that no duty, commensurate with the power, rests on the carrier to advise the traveling public, by reasonable means, of regulations so necessary to any journey by rail; for such a pronouncement would essentially, cast upon the passenger the obligation, not simply to exercise reasonable prudence and diligence to ascertain the regulations, with respect to where, when, and how his journey may be made under regulations existing and published, but to seek out unpublished regulations the operation of which affect his journey.  The result would be, naturally, that no carrier of passengers would make any effort to give publicity to its regulations touching matters associated with the employment of its transportative agencies.  The decision of *A. G. S. R. R. Co. v. Carmichael*, 90 Ala. 19, 8 South. 87,

9 L. R. A. 388, announces, though only in argument of a related question, the duty on the passenger, or proposed passenger, raised by the performance of the primary duty we have said rested on the carrier, to exercise reasonable prudence and diligence to ascertain such regulations in the premises as the carrier has promulgated. If the passenger fails to exercise such care and dilligence, his negligence, and not that of the carrier, is the proximate cause of a resultant injury. The Page Case, supra, so holds, and we think the reasons stated before are conclusive of the correctness of the views entertained.

By brief of counsel for appellant we are advised that the case was tried on counts 5, 6, and 7. Count 6 ascribes the negligence complained of to have been that of the conductor in not notifying her of the necessity to change cars at Union Springs, in order to seasonably pursue her journey to Andalusia. Counts 6 and 7 ascribe the negligence to the defendant, or its agents or servants, in not so informing the plaintiff. We are dealing with the complaint only, with a view to determine whether the complaint states a cause of action. In the light of the considerations stated, we must hold that these counts do each state a cause of action, though, if assailed by properly grounded demurrer, we are not prepared to say, and are not now so invited, whether these counts would be immune therefrom.

Recurring to the motion for a new trial: The only errors urged and argued, aside from the rulings on the pleadings which have been considered, are that the affirmative charge, requested for the defendant, should have been given, on the grounds, first, that there was a failure of proof, in that the motive power was alleged to have been steam, and there was no proof in support of it; and, second, that the affirmative proof shows that

such announcement of the necessity to "change cars at Union Springs for Andalusia" was only met by testimony of a negative character, as that the witness did not hear such announcement, if made—and that the verdict was excessive. It is important to note that there was no semblance of testimony offered tending to show any kind of publishing, by the defendant, of its schedules, routes, or changes of cars for any destination over its lines. This fact, if so, is found in the brief, but not in the record, where, to avail, it must be.

There was testimony tending to support the averments of counts 5, 6, and 7, and on it the jury were authorized to base a verdict for the plaintiff. The insistence that the affirmative evidence must prevail over that purely negative, as stated before, cannot avail, because from the testimony of both Mrs. Ashley and her daughter it appears that both testified postively that no announcement or notice of the necessity for an change of cars at Union Springs was made or given; and the facet that at other times their testimony in this regard was negative, as indicated, did not eliminate the positive statements alluded to. The bill itself refutes the last insistence.

We are of the opinion that the allegation of the character of the motive power—steam— was wholly immaterial and unnecessary to be proven in this action, based, as it is, on alleged negligence entirely foreign to what means of power were employed to drive the train on which plaintiff was a passenger of the defendant, a common carrier.

On the question of asserted excessiveness of the verdict, we are not so convinced of its unreasonableness as to warrant us in reversing the trial court. There was evidence before the jury tending to show illness suffered by plaintiff as a result of the negligence charged, and also annoyance, anxiety, and some financial expense en-

tailed thereby. The plaintiff was a woman, was deflected in her journey, was delayed therein, was compelled to bear added travel, and to sojourn in hotels which, she testified, was unpleasant to her.

The judgment must be affirmed.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.


*Damages for Injury to Employe.*

